Receipt Number 9998-3971884

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAY 22 2017
U.S. COURT OF
FEDERAL CLAIMS

CONNECTICUT YANKEE ATOMIC
POWER COMPANY,

                Plaintiff,

v.

UNITED STATES OF AMERICA,

                Defendant.

No. 17-673 C

## COMPLAINT

Plaintiff Connecticut Yankee Atomic Power Company ("Connecticut Yankee"), through its undersigned counsel, files this Complaint against Defendant the United States of America, and states as follows:

## NATURE OF THE CASE

1. Under the Nuclear Waste Policy Act of 1982 ("NWPA"), the United States, acting through the Department of Energy ("DOE"), in 1983 entered into a contract with Plaintiff Connecticut Yankee pursuant to which DOE, in return for payment of substantial fees by Connecticut Yankee, is obligated to accept and permanently dispose of spent nuclear fuel and high-level nuclear waste (collectively, "SNF") generated by the commercial nuclear power plant owned and operated by Connecticut Yankee.

2. Even though Connecticut Yankee has paid all fees required under the contract to date, DOE has failed to perform its SNF acceptance and disposal obligation, causing Connecticut Yankee to suffer significant damages.

1

3.     This is the fourth suit Connecticut Yankee has filed against the United States seeking damages for DOE's continuing breach of its obligation to accept and permanently dispose of Connecticut Yankee's SNF.  *See Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1376-78 (Fed. Cir. 2005) (hereinafter "*Indiana Michigan*") (holding that utilities should file successive partial breach actions to obtain damages incurred through the time of trial in each successive suit).  The first suit addressed damages incurred by Connecticut Yankee as a result of DOE's breach through December 31, 2001 ("Phase I"); the second suit addressed damages for the period January 1, 2002 through December 31, 2008 ("Phase II"); and the third suit addressed Connecticut Yankee's damages for the period January 1, 2009 through December 31, 2012 ("Phase III").  This fourth suit addresses Connecticut Yankee's damages for the period January 1, 2013 through at least December 31, 2016 ("Phase IV").

**Phase I Litigation—Damages Incurred through December 31, 2001**

4.     Connecticut Yankee first brought a lawsuit alleging material partial breach of DOE's obligation to implement and operate a program for the permanent disposal of Connecticut Yankee's SNF in 1998.  *Connecticut Yankee Atomic Power Co. v. United States*, No. 98-154C (Fed. Cl.) (Merow, S.J.).  Connecticut Yankee's sister utilities, Maine Yankee Atomic Power Company (*Maine Yankee Atomic Power Co. v. United States*, No. 98-474C (Fed. Cl.) (Merow, S.J.)) and Yankee Atomic Electric Company (*Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl.) (Merow, S.J.)) also brought suit against DOE for breach of their SNF contracts, which impose similar obligations on the utilities and DOE as does the Connecticut Yankee contract.  The three Yankee cases were eventually consolidated for trial.

5.     Breach of Connecticut Yankee's contract by DOE was established by the Court, *Yankee Atomic Elec. Co. v. United States*, 42 Fed. Cl. 223, 236 (1998) (Merow, S.J.), and

affirmed by the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), *Maine Yankee Atomic Power Co. v. United States,* 225 F.3d 1336, 1342-43 (Fed. Cir. 2000) (hereinafter "*Maine Yankee*").

6. Subsequently, the Court conducted a seven-week trial on damages in July and August, 2004.

7. On September 30, 2006, Judge Merow, in a 103-page decision, ruled in favor of Connecticut Yankee in the amount of $34,154,879 for activities taken to address or mitigate the impacts of DOE's failure to perform through December 31, 2001. *Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249, 326 n.75 (2006) (Merow, S.J.).

8. Defendant United States appealed Judge Merow's decision to the Federal Circuit, and Connecticut Yankee cross-appealed. On August 7, 2008, the Federal Circuit affirmed-in-part, reversed-in-part, and remanded the case to assess causation applying the SNF contractual acceptance rate specified by certain 1987 DOE documentation. *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268 (Fed. Cir. 2008).

9. The Court conducted a five-day trial to address the remanded issues in August, 2009.

10. On September 7, 2010, Judge Merow, in a 94-page decision, ruled in favor of Connecticut Yankee in the amount of $39,667,243. *Yankee Atomic Power Co. v. United States*, 94 Fed. Cl. 678, 736 n. 67 (2010) (Merow, S.J.).

11. Defendant United States again appealed Judge Merow's decision to the Federal Circuit. On May 18, 2012, the Federal Circuit affirmed the trial court's award. *See Yankee Atomic Elec. Co. v. United States*, 679 F.3d 1354, 1363 (Fed. Cir. 2012). Defendant United States sought rehearing en banc, which was denied on September 5, 2012.

12. Defendant United States issued payment to Connecticut Yankee on January 30, 2013, in the amount of $39,667,243, thereby concluding the Phase I litigation.

**Phase II Litigation—Damages Incurred from January 1, 2002
through December 31, 2008**

13. In accordance with the *Indiana Michigan* Court's instruction to bring separate actions for damages as they are incurred, on December 14, 2007, Connecticut Yankee filed suit to recover damages incurred in years subsequent to those addressed in Phase I. *Connecticut Yankee Atomic Power Co. v. United States*, No. 07-875 (Fed. Cl.) (Merow, S.J.). Maine Yankee Atomic Power Company (*Maine Yankee Atomic Power Co. v. United States*, No. 07-877 (Fed. Cl.) (Merow, S.J.)) and Yankee Atomic Electric Company (*Yankee Atomic Elec. Co. v. United States*, No. 07-876 (Fed. Cl.) (Merow, S.J.)) also brought Phase II suits against DOE, and as in Phase I, the three Yankee cases were eventually consolidated for trial.

14. Following an audit process and discovery, whereby the parties significantly reduced the issues in dispute, the Court conducted a three-day trial in October 2011 to address Connecticut Yankee's damages for the period January 1, 2002 through December 31, 2008.

15. On November 1, 2013, Judge Merow, in a 38-page decision, ruled in favor of Connecticut Yankee in the amount of $126,337,573. *Yankee Atomic Elec. Co. v. United States*, 113 Fed. Cl. 323, 347 (2013) (Merow, S.J.).

16. Defendant United States issued payment to Connecticut Yankee on March 28, 2014, in the amount of $126,337,573, thereby concluding the Phase II litigation.

**Phase III Litigation—Damages Incurred from January 1, 2009 through December 31, 2012**

17. On August 16, 2013, Connecticut Yankee filed suit to recover damages incurred in years subsequent to those addressed in Phase II. *Connecticut Yankee Atomic Power Co. v. United States*, No. 13-586 (Fed. Cl.) (Merow, S.J.). Maine Yankee Atomic Power Company

4

(*Maine Yankee Atomic Power Co. v. United States*, No. 13-585 (Fed. Cl.) (Merow, S.J.)) and Yankee Atomic Electric Company (*Yankee Atomic Elec. Co. v. United States*, No. 13-584 (Fed. Cl.) (Merow, S.J.)) also brought Phase III suits against DOE, and as in the prior phases, the three Yankee cases were eventually consolidated for trial.

18. Following an audit process and discovery, whereby the parties again significantly reduced the issues in dispute, the Court conducted a two-day trial from June 30 through July 1, 2015 to address Connecticut Yankee's damages for the period January 1, 2009 through December 31, 2012.

19. On March 25, 2016, Judge Merow, in a 25-page decision, ruled in favor of Connecticut Yankee in the amount of $32,551,749. *Yankee Atomic Elec. Co. v. United States*, 125 Fed. Cl. 641, 658 (2016) (Merow, S.J.) (hereinafter "*Yankee Atomic*").

20. Among other rulings, the Court determined that absent DOE's breach of its SNF acceptance and disposal obligation, Connecticut Yankee would have been out of business by the end of 2010. *See Yankee Atomic*, 125 Fed. Cl. at 647.

21. Defendant United States issued payment to Connecticut Yankee on October 14, 2016, in the amount of $32,551,749, thereby concluding the Phase III litigation.

**Phase IV Litigation—Damages Incurred from January 1, 2013 through December 31, 2016 (Or Some Other Date Prior to Trial)**

22. DOE still has not performed its obligation to accept and dispose of Connecticut Yankee's SNF, and continues to refuse to provide a firm date for commencing to do so.

23. Therefore, in accordance with the *Indiana Michigan* Court's instruction to bring separate actions for damages as they are incurred, Connecticut Yankee now brings this lawsuit to recover significant damages caused by DOE's material partial breach of its obligation to accept

5

and dispose of Connecticut Yankee's SNF during the period starting January 1, 2013 and ending no earlier than December 31, 2016 (hereinafter "Phase IV period").

## PARTIES

24. Plaintiff Connecticut Yankee is an electric utility company incorporated under the laws of the State of Connecticut. Connecticut Yankee's sole electricity generating facility was a nuclear power plant located in Haddam Neck, Connecticut. That plant has been permanently shut-down and decommissioned. Connecticut Yankee's Independent Spent Fuel Storage Installation ("ISFSI"), the SNF it stores, and certain buildings related to SNF storage are all that presently remain at the Haddam Neck site. The ISFSI cannot be decommissioned and the requisite Nuclear Regulatory Commission license cannot be terminated until DOE performs its obligation to accept and dispose of Connecticut Yankee's SNF.

25. Defendant is the United States of America, acting by and through the DOE.

## JURISDICTION

26. This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1491(a)(1).

27. DOE's failure to comply with its contractual obligation to accept and dispose of Connecticut Yankee's SNF has been conclusively determined to be a material partial breach of the contract, for which Connecticut Yankee may seek recovery of its damages without exhausting any administrative remedies. *See Maine Yankee*, 225 F.3d at 1342-43.

## STATEMENT OF FACTS

### The Nuclear Waste Policy Act and Connecticut Yankee's 1983 Contract

28. In 1982, Congress enacted the NWPA which created a program for the permanent disposal of SNF generated by commercial nuclear power plants. The NWPA codified DOE's

responsibility for the permanent disposal of SNF. The NWPA made utilities responsible for the costs of the program.

29. Consistent with the NWPA, Connecticut Yankee entered into a contract with DOE on June 30, 1983. A copy of Connecticut Yankee's contract as executed with DOE is attached as Exhibit 1. The contract requires DOE to commence performance of disposal obligations not later than January 31, 1998. The contract also requires DOE to arrange for, and provide, transportation casks and all necessary transportation of the SNF from Connecticut Yankee's site to a DOE facility. The contract permits DOE to use any appropriate facility operated by or on behalf of DOE in order to carry out its obligations under the contract.

30. Connecticut Yankee's contract provides that Connecticut Yankee would pay DOE fees which, together with fees paid by other utilities pursuant to contracts under the NWPA, would be sufficient for DOE to implement and operate a program for the prompt disposal of all SNF that Connecticut Yankee would be ready to deliver.

31. Connecticut Yankee's contract provides that, in return for the payment of such fees, DOE would in fact implement and operate a program for the prompt disposal of all SNF that Connecticut Yankee would be ready to deliver.

32. In accordance with the contract, Connecticut Yankee has paid all fees required under the contract to date for disposal of its SNF, and remains ready to deliver its SNF to DOE.

### DOE's Breach of Its Contractual Obligation

33. DOE did not begin to accept and dispose of SNF by January 31, 1998, as required by the NWPA and its contract with Connecticut Yankee, and has consistently extended the earliest time at which it expects to begin accepting SNF. DOE has refused to provide any firm commencement date for the disposal of Connecticut Yankee's SNF.

34. In the predecessor Phase I litigation, the Federal Circuit concluded that DOE's failure to begin accepting SNF by the January 31, 1998 contractual deadline constituted a breach of its contract with Connecticut Yankee. *Maine Yankee*, 225 F.3d at 1342-43.

**Connecticut Yankee's Damages**

35. The Court previously determined that absent DOE's breach, Connecticut Yankee would have been out of business by the end of 2010. *See Yankee Atomic*, 125 Fed. Cl. at 647. Accordingly, had DOE performed its SNF acceptance and disposal obligation, Connecticut Yankee would not have incurred costs of any kind during the Phase IV period.

36. Connecticut Yankee remained in business and continued to incur operating expenses during the Phase IV period only because it is required to store and safeguard the SNF that remains on its property as a result of DOE's breach.

37. As a result of DOE's continuing material partial breach, Connecticut Yankee has incurred, for the period starting January 1, 2013 and continuing through at least December 31, 2016, significant additional costs for its continued corporate existence and extended storage of its SNF, including without limitation, costs associated with labor, staff augmentation and other contracted work, insurance, materials and supplies, security and surveillance, utilities, regulatory oversight, fees, taxes, and other costs.

## <u>COUNT I</u>
**(Partial Breach of Contract)**

38. Paragraphs 1 through 37 are incorporated herein by reference as if set forth in full.

39. The 1983 contract between Connecticut Yankee and DOE imposes an unconditional obligation on DOE to accept and dispose of Connecticut Yankee's SNF promptly and to commence performance beginning in 1998, in return for Connecticut Yankee's payment of specified fees.

8

40. Connecticut Yankee has paid all fees required under the contract to date for disposal of its SNF.

41. In the predecessor Phase I litigation, the Federal Circuit concluded that DOE's failure to begin accepting SNF by the January 31, 1998 contractual deadline constituted a material partial breach of its contract with Connecticut Yankee. *Maine Yankee*, 225 F.3d at 1342-43.

42. DOE has continued to default on its contractual obligation to promptly accept and dispose of Connecticut Yankee's SNF. All of Connecticut Yankee's contract claims in this action are solely for damages arising from DOE's failure of performance, which constitutes a material partial breach of contract. Connecticut Yankee insists that DOE eventually meet its obligation to accept and dispose of Connecticut Yankee's SNF, and, should DOE fail to do so, Connecticut Yankee reserves all rights to assert new and separate claims at that time and to seek remedies appropriate for a complete breach of the contract.

43. As a direct, proximate and substantial result of DOE's partial breach of contract, Connecticut Yankee has incurred and will continue to incur additional costs associated with its continued corporate existence and extended storage of its SNF.

44. By reason of the foregoing, Defendant United States is liable to Connecticut Yankee for damages for partial breach of contract.

## COUNT II
**(Breach of the Implied Duty of Good Faith and Fair Dealing)**

45. Paragraphs 1 through 44 are incorporated herein by reference as if set forth in full.

46. The 1983 contract between Connecticut Yankee and DOE imposed upon DOE an implied duty of good faith and fair dealing.

9

47. The implied duty of good faith and fair dealing required DOE to cooperate with Connecticut Yankee and to reasonably perform its duties under the contract.

48. DOE breached its duty of good faith and fair dealing by failing and refusing to accept and dispose of Connecticut Yankee's SNF, by failing and refusing to take appropriate steps to ensure that DOE would be able to accept and dispose of Connecticut Yankee's SNF, and by otherwise failing to perform its duties under the contract.

49. As a direct, proximate and substantial result of DOE's breaches of its duty of good faith and fair dealing, Connecticut Yankee has incurred and will continue to incur additional costs associated with its continued corporate existence and extended storage of its SNF.

50. By reason of the foregoing, Defendant United States is liable to Connecticut Yankee for damages for breach of the implied duty of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Connecticut Yankee Atomic Power Company demands judgment against Defendant United States:

On Count I, for significant damages, in an amount to be determined at trial;

On Count II, for significant damages, in an amount to be determined at trial;

On all Counts, for interest and for such costs, expenses and attorneys' fees as are available under applicable law, and such other relief as this Court may deem necessary and proper.

Dated: May 22, 2017

Respectfully submitted,

/s/ Robert H. Stier, Jr.
ROBERT H. STIER, JR.
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME  04101
rstier@pierceatwood.com
Telephone:  (207) 791-1100
Facsimile:  (207) 791-1350

OF COUNSEL:

LUCUS A. RITCHIE
lritchie@pierceatwood.com
PIERCE ATWOOD LLP

MICHAEL J. DERDERIAN
mderderian@pierceatwood.com
PIERCE ATWOOD LLP

*Attorneys for Plaintiff Connecticut Yankee Atomic Power Company*